UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------ X

SECURITIES AND EXCHANGE
COMMISSION,

                Plaintiff,

           - against -

TECUMSEH HOLDINGS CORP.,
TECUMSEH TRADEVEST LLC, S.B.
CANTOR & CO., INC., JOHN L.
MILLING, GERARD A. McCALLION,
ANTHONY M. PALOVCHIK, AND
DALE CARONE,

                Defendants.

------------------------------------------------------ X

**MEMORANDUM OPINION
AND ORDER**

03 Civ. 5490 (SAS)

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I. INTRODUCTION

        In 2003, the Securities and Exchange Commission ("SEC") filed this suit alleging securities violations by Tecumseh Holding Corporation ("Tecumseh"), Tecumseh Tradevest LLC, S.B. Cantor & Company ("Cantor"), John L. Milling, Gerard A. McCallion, Anthony M. Palovchick, and Dale Carone. The Court previously entered Partial Final Consent Judgments against Palovchik and Carone, resolving, on each defendant's consent, all issues of liability against

1

them and leaving to the Court's discretion the assessment of disgorgement and civil penalties. Now before the Court is the motion of the SEC for an order determining disgorgement and civil monetary penalties against those two defendants.[1]

## II. BACKGROUND

The background of this case is laid out extensively in the Opinions and Orders of this Court dated December 22, 2009[2] and January 18, 2011.[3] Suffice it to say that Tecumseh engaged in a series of fraudulent, unregistered offerings of Tecumseh and Tecumseh Tradevest LLC securities from June 2000 until April or July 2003, raising at least ten million dollars from about five-hundred investors nationwide through a cold-calling campaign run through a team of sales representatives in Tecumseh's California office. The offering memoranda describing Tecumseh and its securities contained false and misleading statements concerning (1) Tecumseh's anticipated profits, (2) Tecumseh's dividends or

---

[1] For the purposes of assessing the SEC's motion, and by the consent of both Palovchik and Carone, the Court accepts as true all of the allegations in the Complaint.

[2] *SEC v. Tecumseh Holdings Corp.*, No. 03 Civ. 5490, 2009 WL 4975263, at *1 (S.D.N.Y. Dec. 22, 2009) ("2009 Opinion").

[3] *See SEC v. Tecumseh Holdings Corp.*, --- F. Supp. 2d ----, No. 03 Civ. 5490, 2011 WL 147725, at *1-2 (S.D.N.Y. Jan. 18, 2011) ("2011 Opinion").

returns on investment, and (3) the National Association of Securities Dealers' ("NASD") approval of Tecumseh's acquisition of Cantor.

## II. DISCUSSION

### A. Palovchik and Carone Are Jointly and Severally Liable to Disgorge Fraud Proceeds

The SEC argues that Palovchik and Carone should be ordered to disgorge the proceeds of the fraud together with Milling and Tecumseh.[4] Courts may impose joint and several liability where two or more defendants have collaborated in the illegal conduct at issue.[5]

### 1. Palovchik

---

[4] This Court previously found that the appropriate disgorgement amount is approximately $7,200,000 – representing the total amount raised in the offerings minus the amounts returned to investors, the assets marshaled by the receiver and the amounts from prior settlements – and that Milling should be held jointly and severally liable with Tecumseh for that amount. *See* 2009 Opinion, 2009 WL 4975263, at *6.

[5] *See SEC v. AbsoluteFuture.com*, 393 F.3d 94, 97 (2d Cir. 2004). *Accord SEC v. Calvo*, 378 F.3d 1211, 1215 (11th Cir. 2004) ("It is a well settled principle that joint and several liability is appropriate in securities laws cases where two or more individuals or entities have close relationships in engaging in illegal conduct.") (citations omitted); *Hateley v. SEC*, 8 F.3d 653, 656 (9th Cir. 1993) (affirming disgorgement order imposed jointly and severally against broker-dealer securities firm, its president, and its executive vice-president for violations of NASD rules where defendants "acted collectively in violating the association's rules and because of the close relationship among the three of them"); *SEC v. Hughes Capital Corp.*, 917 F. Supp. 1080, 1088 (D.N.J. 1996) (finding joint and several liability of corporation and individual defendants because all were "knowing participants who acted closely and collectively").

Palovchik played an essential role in the Tecumseh offerings. At all times relevant to the Complaint, Palovchik was Tecumseh's Vice President.[6] He knowingly provided substantial assistance to Milling and Tecumseh in the fraud.[7] Palovchik was responsible for the day-to-day administrative oversight of all of Tecumseh's business operations, including data, paperwork, and compliance issues.[8] Among other things, he reported Tecumseh's daily trading profits and losses to the California office, prepared Tecumseh's trading reports, and handled matters pertaining to the registration of the California office with the NASD.[9] Self-described as Tecumseh's "point man" and "problem solver," Palovchik worked exclusively for Milling.[10]

During the ongoing securities offerings, Palovchik knew about the

---

[6] *See* Complaint ("Compl."), Ex. M to Declaration of Nancy A. Brown, counsel for the SEC, in Support of Plaintiff's Motion for Partial Summary Judgment ("Brown PSJ Decl.") [Docket No. 97], ¶ 14.

[7] *See id.* ¶ 52.

[8] *See id.* ¶ 52(b).

[9] *See* Memorandum titled "Employee Duties – December 2002," Ex. A to Declaration of Linda L. Arnold, counsel for the SEC, in Support of Plaintiff's Motion for Order Determining Disgorgement and Civil Monetary Penalties ("Arnold Decl."), at 1; Fax from Palovchik to Carone dated March 19, 2003, Ex. B to Arnold Decl.

[10] *See* Excerpts of the Declaration of Terrence P. Bohan ("Bohan Decl."), Ex. C to Arnold Decl, ¶ 12.

true financial condition of Tecumseh and Cantor.[11] He also knew how Tecumseh was describing the formula for calculating the "dividend" payments in the offering materials, and he was aware that checks were being issued to investors with the notation "dividend."[12] He also understood that the payments were not really dividends because he knew Tecumseh had no earnings, given his daily reporting of Tecumseh's trading profits and day-to-day oversight of all of Tecumseh's business operations.[13] Indeed, during the SEC's examination of Cantor in February of 2003, Palovchik admitted to the SEC's staff that the real source of Tecumseh's "dividends" was investors' capital contributions.[14] As a result of his knowing and substantial assistance to Tecumseh and Milling in their violations of section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder, the SEC's Complaint asserted violations of section 20(e) of the Exchange Act against him as an aider and abettor.[15]

### 2. Carone

Carone also played an essential role in the Tecumseh offerings.

---

[11] *See* Compl. ¶ 52(b).

[12] *See id.*

[13] *See id.*

[14] *See* Bohan Decl. ¶ 47.

[15] *See* Compl. ¶¶ 61-63 (Second Claim for Relief).

Milling has admitted that he shared control of Tecumseh with Carone and Souran.[16] As Tecumseh's Vice Chairman, Carone was responsible for setting up and managing Tecumseh's sales operation in its California office.[17] Working closely with Milling, Carone managed a sales force of as many as thirty-three sales representatives who solicited investors to purchase Tecumseh's securities.[18] The California sales force sold Tecumseh's securities through a nationwide cold-calling campaign, and Milling and Carone oversaw their activities.[19] Milling has admitted that, among other things, he and Carone discussed matters pertaining to the sale of Tecumseh's securities.[20] Milling also admitted that he and Tecumseh "relied on Dale Carone to oversee, manage and enforce compliance by all company personnel with the requirements for the lawful and proper sale of Tecumseh shares."[21]

Carone also participated in the illegal offerings by directly selling

---

[16] *See* Milling's Amended Responses to the SEC's Requests for Admission dated May 22, 2009 ("Amended Admissions"), Ex. A to Brown PSJ Decl., ¶ 3.

[17] *See* Compl. ¶ 14.

[18] *See id.* ¶ 23.

[19] *See* 2009 Opinion, 2009 WL 4975263, at *3; Amended Admissions ¶ 3.

[20] *See id.*

[21] Excerpts of Milling's Submission in Opposition to SEC's Motion for Summary Judgment dated November 1, 2010, Ex. D to Arnold Decl., at 1.

Tecumseh securities to investors at a time when Carone was not a registered representative associated with a registered broker dealer.[22] The SEC's Complaint alleges that Carone violated sections 5(a) and 5(c) of the Securities Act of 1933 ("Securities Act")[23] and section 15 of the Exchange Act.[24]

Based on the foregoing, I hold that both Palovchik and Carone were "knowing participants who acted closely and collectively"[25] such that they should be held jointly and severally responsible with Milling and Tecumseh for disgorgement of $7,200,000.

### B. Palovchik and Carone Are Jointly and Severally Liable to Pay Pre-judgment Interest

The SEC argues that the Court should require Palovchik and Carone to pay pre-judgment interest on the full amount of disgorgement on a joint and several basis with Milling.[26] An award of pre-judgment interest is a proper

---

[22] *See* Compl. ¶ 75.

[23] *See id.* ¶¶ 64-66 (Third Claim for Relief).

[24] *See id.* ¶¶ 74-76 (Sixth Claim for Relief).

[25] *Hughes Capital Corp.*, 917 F. Supp. at 1088.

[26] Pursuant to the SEC's joint settlement with defendants Tecumseh, Tecumseh Tradevest LLC, and Cantor, Tecumseh was ordered to disgorge $7,271,134 in ill-gotten gains and Cantor was held jointly and severally liable with Tecumseh for $850,000 of that amount. In that settlement, the Consent Judgment did not order pre-judgment interest from Tecumseh or Cantor.

exercise of judicial discretion, and courts typically impose pre-judgment interest in SEC enforcement actions.[27] In determining pre-judgment interest, it is appropriate to use the IRS underpayment rate,[28] and the interest should be compounded quarterly[29] and calculated "for the entire period from the time of defendants' unlawful gains to the entry of judgment."[30] Accordingly, Palovchik and Carone are ordered to pay pre-judgment interest on $7,200,000, on a joint and several basis with Milling, from May 4, 2003, to the last date Tecumseh received offering proceeds, through December 22, 2009, in the amount of $3,466,346.48.[31]

C. **Civil Penalties Are Appropriate**[32]

---

[27] *See, e.g., SEC v. Warde*, 151 F.3d 42, 50 (2d Cir. 1998); *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1476 (2d Cir. 1996).

[28] *See* 26 U.S.C. § 6621(a)(2).

[29] *See* 17 C.F.R. § 201.600(b).

[30] *First Jersey Secs.*, 101 F.3d at 1476-77.

[31] *See* Calculation of Pre-judgment Interest on Milling's Disgorgement Amounts from March 4, 2003 through December 22, 2009, Ex. B to the Declaration of Dee-Ann DiSalvo in Support of Plaintiff's Motion for Partial Summary Judgment Against Milling [Docket No. 106].

[32] The standard for assessing civil penalties in SEC enforcement actions is laid out in the 2009 and 2011 Opinions. *See* 2009 Opinion, 2009 WL 4975263, at *6-7; 2011 Opinion, 2011 WL 147725, at *10.

A "third-tier" civil penalty[33] of $110,000[34] is appropriate as against Palovchik because his violations involved fraud and resulted in, or created a significant risk of, substantial losses to other persons.[35] As noted above, Palovchik aided and abetted Tecumseh's and Milling's violations of the antifraud provisions. Palovchik, a Tecumseh Vice President, helped Milling manage all aspects of Tecumseh. His role in the enterprise constituted substantial assistance, and it was coupled with a high degree of scienter: He knew about Tecumseh's offerings, was aware that Tecumseh's only revenues came from new investors, was familiar with the dire financial condition of Tecumseh, knew that Tecumseh's so-called "dividend" payments were improper, and knew that Tecumseh had not informed investors about the source of these payments.

As to Carone, who has not been charged with fraud, a "first-tier" civil

---

[33] *See* 15 U.S.C. § 78u(d)(3)(B)(iii).

[34] *See* 17 C.F.R. §§ 201.1001 and 201.1002.

[35] I impose the statutorily-prescribed penalty on – as opposed to the gross amount of pecuniary gain to – each defendant because the SEC has not provided any evidence of the total amount of pecuniary gain Palovchik or Carone personally received from the sale of unregistered securities. In any event, because they have already been held jointly and severally liable for the entire amount of Tecumseh's ill-gotten gains, the maximum statutory fine against each of them is adequate to punish them and deter future violations.

penalty[36] of $6,500[37] is more appropriate. In addition to the facts recited above, Carone is a recidivist. In early 2003, the SEC sued Carone in the Central District of California for engaging in the fraudulent and unregistered offering of securities in LinkNet, Inc. and LinkNet de America Latina (collectively "LinkNet")[38] and was awarded a default judgment.[39] According to the Complaint, Carone sold LinkNet securities during its unregistered offering from August 1999 to October 2000 and engaged in "cold-calling tactics" and supervised a "boiler room operation" set up to market the securities.[40] Subsequently, the SEC barred Carone from association with any broker or dealer pursuant to section 15(b)(6) of the Exchange Act as a result of his conduct in connection with the LinkNet offering.[41] Carone was also the subject of a 2001 cease and desist order by the Ohio Division

---

[36]  *See* 15 U.S.C. § 77t(d)(2)(A).

[37]  *See* 17 C.F.R. §§ 201.1001 and 201.1002.

[38]  *See* Docket from *SEC v. Dale Carone, et al.*, No. 03 Civ. 374 (C.D. Cal.), Ex. D to Brown PSJ Decl.

[39]  *See* Order entered March 10, 2004, Granting Plaintiff's Motion for Default Judgment, Ex. E to Brown PSJ Decl.

[40]  *Id.*

[41]  *See In the Matter of Dale Carone*, Exchange Act Rel. No. 50236 (Aug. 24, 2004).

of Securities for state registration and securities fraud violations.[42]

For all of these reasons, the imposition of civil penalties is appropriate.

## III. CONCLUSION

For the foregoing reasons, I grant the SEC's motion for an order imposing on Palovchik and Carone (1) joint and several liability for (i) $7,200,000 in disgorgement and (ii) $3,466,346.48 in pre-judgment interest and (2) first-tier and third-tier civil penalties of $110,000 and $6,500, respectively. The Clerk of the Court is directed to close this motion [Docket No. 130].

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
May 23, 2011

---

[42] *See* Bohan Decl. ¶ 13.

## - Appearances -

**For the SEC:**

Nancy A Brown, Esq.
Linda Lai-king Arnold, Esq.
Securities & Exchange Commission
3 World Financial Center, Room 4300
New York, New York 10281
(212) 336-1023

**Defendant Anthony Palovchik:**

12188 NW 47th Manor
Coral Springs, Florida 33076

**Copy to:**

John L. Milling, Esq.
Milling Law Offices
115 River Road
Building 12, Suite 1205
Edgewater, New Jersey 07020
(201) 869-6900